## No. C-1341

### The People of the State of Colorado v. Doyle Kenneth Cole

(584 P.2d 71)

Decided June 5, 1978. Rehearing granted July 10, 1978. On rehearing September 18, 1978, original opinion and dissent adhered to.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Deborah L. Bianco, Assistant, J. Stephen Phillips, Chief, Criminal Appellate Section, David H. Zook, Deputy District Attorney, for plaintiff-petitioner.

Walter L. Gerash, P.C., Jeffrey A. Springer, for defendant-respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The defendant, Doyle Kenneth Cole, was charged in an information with the sale of a narcotic drug (heron) and conspiracy to sell a narcotic drug with the intent to induce or aid the unlawful use or possession ("hard sale"). Trial to a jury resulted in the defendant's conviction of conspiracy to sell a narcotic drug and of the lesser included offense of "soft sale." The court of appeals reversed the convictions and ordered a new trial in *People v. Cole,* 39 Colo. App. 323, 570 P.2d 8 (1977). We granted certiorari and now affirm in part, reverse in part, and remand with directions for a new trial.

The prosecution contends on appeal that the court of appeals erred when it held that (1) a witness may not be impeached by his post-arrest silence, and (2) statements made by a defendant in connection with a withdrawn plea agreement are inadmissible for any purpose in a trial on the merits. We address the issues in the order stated.

## I.

■ The principles applicable to impeachment by post-arrest silence were set out in *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975):

"A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness. As a preliminary matter, however, the court must be persuaded that the statements are indeed inconsistent. 3A *J. Wigmore, Evidence* § 1040 (Chadbourn rev. 1970). If the Government fails to establish a threshold inconsistency between silence . . . and later exculpatory testimony at trial, proof of silence lacks any significant probative value and must therefore be excluded."

*See also Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). In *United States v. Hale, supra,* the Supreme Court concluded that the defendant's silence during custodial interrrogation and after *Miranda*[1] warnings lacked the requisite inconsistency with exculpatory testimony offered at the trial and was, therefore, inadmissible for impeachment purposes.

The factors which cause post-arrest silence to be inherently ambiguous were discussed in *United States v. Hale, supra:*

"[A]n arrestee . . . is under no duty to speak and, as in this case, has ordinarily been advised by government authorities only moments earlier that he has a right to remain silent, and that anything he does say can and will be used against him in court.

"At the time of arrest and during custodial interrogation, innocent and guilty alike — perhaps particularly the innocent — may find the situation so intimidating that they may choose to stand mute. A variety of reasons may influence that decision. In these often emotional and confusing circumstances, a suspect may not have heard or fully understood the question, or may have felt there was no need to reply. See Traynor, The Devils of Due Process in Criminal Detection, Detention, and Trial, 33 U Chi L Rev 657, 676 (1966). He may have maintained silence out of fear or unwillingness to incriminate another. Or the arrestee may simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention. In sum, the inherent pressures of in-custody interrrogation exceed those of questioning before a grand jury and compound the difficulty of identifying the reason for silence."

The Court concluded that the defendant's post-arrest silence in *United States v. Hale, supra,* was of dubious probative value.

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

One year after its decision in *United States v. Hale, supra,* the Supreme Court held that impeachment of a defendant by his post-arrest silence violates the due process clause of the United States Constitution. *U.S. Const.,* Amend. XIV. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Although it elevated the basis for its earlier decision to a constitutional level, the Court continued to recognize the inherent ambiguity which is tied to post-arrest silence:

"Silence in the wake of Miranda warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested."

■ The fact that this case concerns the impeachment of a defense witness, rather than a defendant, does not relieve the prosecution of the burden of establishing that the witness' silence is inconsistent with his trial testimony. *United States v. Rubin,* 559 F.2d 975 (5th Cir. 1977); *United States v. Williams,* 464 F.2d 927 (8th Cir. 1972). Although the constitutional protections which constitute the basis for the Court's decision in *Doyle v. Ohio, supra,* do not extend to witnesses, the logic of the evidentiary principles relied upon in *United States v. Hale, supra,* apply with equal force to defendant and witness alike. The issue in either case is whether the prosecution has established a threshold inconsistency between the witness' post-arrest silence and his trial testimony.

■ The defense witness impeached by post-arrest silence at the defendant's trial was Michael Johnson, a co-conspirator named in the conspiracy count of the information. When Johnson was arrested, he exercised his constitutional right against self-incrimination and remained silent. Johnson's testimony offered an explanation of the circumstances surrounding the arrests favorable to the defendant's innocence. On cross-examination, the prosecution was permitted to impeach Johnson's credibility by questions concerning his post-arrest silence and his failure to relate the story advanced at trial to the police.

A danger inherent in permitting the prosecution to impeach a witness allegedly involved in the same criminal transaction as the defendant with his post-arrest silence is that the jury will infer guilt on the part of the witness and transfer that guilt to the defendant. *United States v. Rubin, supra.* Under the circumstances of this case, the improper impeachment of the defense's primary witness was critical to the jury's acceptance of the defendant's theory of the case and constituted prejudicial error. Johnson's testimony, if believed, would have explained the sequence of events surrounding the criminal episode in a manner consistent with the defendant's innocence.

## II.

Prior to the commencement of trial, the defendant tendered a plea of guilty to the "soft sale" of a narcotic drug, pursuant to a negotiated plea

agreement. The plea was conditioned upon the defendant being granted probation. The trial court accepted the conditional plea, subject to receipt of a probation department report concerning the propriety of granting the defendant probation. Review of the probation report, however, caused the trial court not to grant probation. The defendant then withdrew his plea of guilty, and the case was set for trial.

At the time of trial, the defendant offered a theory of defense which was not consistent with his statement to the court at the providency hearing. The district attorney advised the court of his intent to use the defendant's statement at the providency hearing for impeachment purposes if the defendant testified.

The defendant, thereafter, filed a motion to suppress all statements he had made in connection with his withdrawn guilty plea. The statements sought to be suppressed were made in response to questions propounded by the trial court during the providency hearing. In an effort to establish a factual basis for the defendant's guilty plea, the court stated that it wanted "to know what the soft sale was, where it took place and what you did." The defendant provided the requested information.

At the *in camera* suppression hearing, the trial court ruled that the fact that the defendant had tendered and withdrawn a plea of guilty would be inadmissible for any purpose. Section 16-7-303, C.R.S. 1973; Crim. P. 11(f)(6). But the trial court held that the defendant's statements at the providency hearing were voluntary and could be used for impeachment purposes if no reference was made to the context in which they had been made. The court of appeals reversed, holding that statements made in connection with a withdrawn plea of guilty are inadmissible for any purpose.

■ We find this issue comes within the ambit of *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), wherein the Supreme Court declared:

"It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards.

. . . .

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See United States v. Knox, 396 US 77, 24 L Ed 2d 275, 90 S Ct 363 (1969); cf. Dennis v. United States, 384 US 855, 16 L Ed 2d 973, 86 S Ct 1840 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and

impeachment.

"The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements." (Footnotes omitted.)

The principles enunciated in *Harris v. New York, supra,* were affirmed in *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

The reasoning of the above-cited cases has been applied in a case substantially on all fours with this proceeding. In *State v. Anonymous,* 30 Conn. Sup. 181, 307 A.2d 785 (1973-4), the court held that voluntary statements made in connection with a withdrawn plea agreement were admissible for impeachment purposes, although not for use in the prosecution's case in chief.

Rule 410 of the Federal Rules of Evidence, although now superseded by Fed. Crim. P. 11 (e)(6),[2] addressed the issue which is before us for resolution, and provides:

"Except as otherwise provided by Act of Congress, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer. This rule shall not apply to the introduction of voluntary and reliable statements made in court on the record in connection with any of the foregoing pleas or offers where offered for impeachment purposes or in a subsequent prosecution of the declarant for perjury or false statement.

---

[2] Fed. R. Crim. P. 11(e)(6):

"(6) *Inadmissibility of Pleas, Offers of Pleas, and Related Statements.* Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel."

The Colorado General Assembly has foreclosed perjury prosecution, in accordance with the provisions of the Federal Rule, by the enactment of section 18-8-507, C.R.S. 1973, which provides:

"*Perjury and false swearing — previous trial.* No prosecution shall be brought under section 18-8-502 and 18-8-504 if the substance of the defendant's false statement is a denial of his guilt in a previous trial in which he was accused of an offense. This section does not apply to a false denial of the fact of a previous conviction."

*See also Weinstein and Berger,* 2 *Weinstein's Evidence, United States Rules* § 410(01).

"This rule shall not take effect until August 1, 1975, and shall be superseded by any amendment to the Federal Rules of Criminal Procedure which is inconsistent with this rule, and which takes effect after the date of the enactment of the Act establishing these Federal Rules of Evidence."

■ The quest for justice in a criminal trial centers on the search for truth. The prosecution cannot withhold evidence favorable to the accused, and no accused should be permitted to profit by falsifying testimony to obtain a favorable plea agreement and to mislead the court. *Compare Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *and Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d. 737 (1967), *with Miller v. Pate,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d. 690 (1967).

■ If plea negotiations are to be recognized, they must be predicated on reliable facts in the record which relate directly to the charge before the court. *See American Bar Association Standards Relating to Pleas of Guilty* §§ 1.5, 1.6, 1.7, 1.8; *American Bar Association Standards Relating to Functions of the Trial Judge* §§ 4.1, 4.2; *American Law Institute Model Code of Pre-Arraignment Procedure* §350.3; *W. Erickson, The Finality of a Plea of Guilty,* 48 *Notre Dame Lawyer* 835 (1973).

■ In our view, the court has a right to rely on the facts which provide the foundation for a plea agreement when those facts are reliable, appear on the record, and are voluntarily disclosed by the defendant. *Accord, United States v. Simmons,* 537 F.2d 1260 (4th Cir. 1976); Note, *Trial Judge's Satisfaction as to Voluntariness and Understanding of Guilty Pleas,* 1970 *Wash. U.L.Q. 289.*

■ Both the prosecution and the defense are entitled to rely on the terms of the plea agreement. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Graham,* 325 F.2d 922 (6th Cir. 1963); *see Bishop, Broken Bargains,* 50 *J.Urb.L.* 231 (1972).

■ *Harris v. New York, supra,* and its progeny reflect a determination that no defendant is entitled to pervert his right to testify into a right to commit perjury. Evidence, inadmissible against the defendant in the prosecution's case in chief, is, therefore, permitted to be used for the limited purpose of impeaching the defendant's credibility should he take the stand and testify in a manner inconsistent with his prior statements. Notwithstanding the court's substantial interest in preventing perjury, however, a preliminary requirement to the use of a statement for impeachment purposes is that it be voluntary and trustworthy. *Oregon v. Hass, supra; Harris v. New York, supra; State v. Anonymous, supra.*

■ The traditional test employed to determine the voluntariness of a defendant's statements is applicable in this context. The statements cannot have been "extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of

any improper influence." *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); *see Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). If statements are found to have been made involuntarily, they are suppressed because their trustworthiness and reliability are inherently suspect.

■ We hold that a defendant who challenges the voluntariness or reliability of statements sought to be used against him at trial for impeachment purposes is entitled to a hearing which provides the safeguards set forth in *Jackson v. Denno.*[3] The trial court in this case stated as a matter of fact that the defendant's statements were voluntary. The court's conclusion, however, was not the result of the type of hearing we now hold to be required. In light of the determination that a new trial is required as a result of the improper impeachment of a defense witness, we decline to address the question concerning the voluntariness or the reliability of the defendant's statements. The trial court is best suited to conduct the required hearing to determine that issue.

Accordingly, the judgment is affirmed in part, reversed in part, and the cause is returned to the court of appeals with directions to order a remand for a new trial consistent with the directions contained in this opinion.

MR. JUSTICE GROVES, MR. JUSTICE LEE, and MR. JUSTICE CARRIGAN concurring in part and dissenting in part.

MR. JUSTICE CARRIGAN concurring in part and dissenting in part:

I concur in Part I of the majority opinion, regarding impeachment of a witness by his post-arrest silence. I respectfully dissent, however, as to Part II of the majority opinion, because I believe the better rule to be that espoused by the court of appeals in this case[1] and followed by the federal courts under Fed. R. Crim. P. 11 (e)(6).[2]

---

[3] 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

[1] *People v. Cole,* 39 Colo. App. 323, 570 P.2d 8 (1977).

[2] *"Inadmissibility of Pleas, Offers of Pleas, and Related Statements.* Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel."

There are many reasons why one accused of a crime may engage in plea-bargaining and ultimately plead guilty to a lesser crime in exchange for dismissal of a more serious charge or for a recommendation that he be granted probation or a light sentence. Occasionally, hopefully only rarely, even an innocent defendant, faced with overwhelming circumstantial evidence of guilt, and threatened by the risk of being convicted of a major crime carrying a lengthy prison sentence, may forego his right to trial and plead guilty to a lesser offense in the hope that he is choosing the lesser of two evils. Some defendants may not want to put their families through the expense, embarrassment and emotional trauma of a public trial. Other defendants may for various reasons decide that the advantages of a trial may be greatly outweighed by those of pleading guilty, particularly if probation or a light sentence may be granted.

No matter what the real reason for a bargained guilty plea may be in any particular case, whether or not the trial court will accept that plea generally depends on its determination that the plea has a "factual basis." Crim. P. 11; section 16-7-207(2)(f), C.R.S. 1973.[3] Such a determination, in turn, requires the defendant or his counsel to satisfy the court that the defendant's conduct giving rise to the more serious charges provides an adequate factual predicate to support a finding that he is guilty of the crime to which he wants to plead. Therefore, regardless of his reasons for negotiating a plea bargain, a defendant is placed in the inherently coercive situation of either providing the court with that factual basis or having the court refuse to accept his plea and force him to trial on the more grave charges. In such circumstances, a defendant may feel constrained to state what all in the courtroom expect of him, *i.e.,* sufficient facts connecting him to the criminal incident to assure that his plea will be accepted. In my opinion, statements made under such compulsion, however subtle, cannot be viewed as "voluntary," and therefore their trustworthiness is unreliable at best. Hence, such statements should not be admissible at a subsequent trial for the offense originally charged.

Surely it is in the public interest to avoid the delay, expense and inconvenience unavoidably incident to felony trials whenever possible. In all forms of litigation the law favors settlement of legal disputes. Indeed, were it not for the fact that most defendants charged with crimes plead guilty, our courts would be grossly overburdened with criminal trials. Because criminal trials must occur within six months[4] after a not-guilty plea is en-

---

[3] That determination may be waived by the defendant. Crim. P. 11(b)(6); section 16-7-207(2)(f), C.R.S. 1973. Nonetheless, as a practical matter, it is unlikely that a defendant, when told by the judge who holds the power to send him to prison or grant him probation, that he must admit to certain facts in order to have his plea accepted, will refuse and thus risk rejection of the plea bargain.

[4] Crim. P. 48(b). *See also* section 18-1-405, C.R.S. 1973.

tered, any substantial increase in the per cent of criminal cases going to trial will necessarily force civil cases off the trial schedule.

The sound public policy favoring settlement, rather than trial, of lawsuits should require that statements made in connection with settlement or plea bargaining efforts not be admissible in evidence at the trial if the settlement efforts fail. This is the long-established rule governing attempts to compromise and settle civil litigation. *McCormick, Evidence* 663 (1972); *IV Wigmore* §1061 (Chadbourn Ed. 1972).

Nor am I overwhelmed by the majority opinion's righteous endorsement of "determination that no defendant is entitled to pervert his right to testify into a right to commit perjury." We are all equally opposed to sin, and perjury is as odious to me as to the majority. If indeed section 18-8-507, C.R.S. 1973 would bar prosecution for perjury of one who willfully lies at trial, the remedy is simple. The legislature can repeal the statute or enact an exception to cover this situation.

Last, but not least, we ought not adopt a procedure so fundamentally unfair as that approved by the majority. Normally a defendant will not make a statement, and thus provide evidence against himself, but for the State's inducement through a plea bargain. Moreover, the trial court's indication that it will refuse to accept the bargained plea unless the defendant admits facts sufficiently ensnaring him in criminal conduct to provide a "factual basis," amounts to an ultimatum delivered to one already under considerable emotional stress. Implicit in the situation is the understanding that the defendant's statement is being made solely for the court's consideration in deciding whether to accept the tendered plea. In effect the statement is extracted as a condition to obtain court approval of the plea bargain. When the court rejects the plea bargain and puts the defendant on trial on the original charge, it is not fair to allow the State to retain and use against the defendant the fruits of the rejected plea bargain. In my view this procedure is so fundamentally unfair as to constitute a denial of due process. *U. S. Const.,* Amend. XIV; *Colo. Const.* Art. II, sec. 25.

I am authorized to state that MR. JUSTICE GROVES and MR. JUSTICE LEE join in the foregoing.